Law Office of Ian Chowdhury
Ian D. Chowdhury (SBN: 199018)
8853 Fullbright Avenue
Winnetka,  91306
Telephone: 818-407-0510
Facsimile:  818-337-2215
E-mail:  ian@ianchowdhury.com

Attorney for Plaintiffs
Ginger Melillo and Abigail Usher

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| Ginger Melillo and Abigail Usher, Individually and on Behalf of All Others Similarly Situated <br><br> Plaintiffs, <br><br> v. <br><br> Erica L. Brachfeld; The Brachfeld Law Group, PC; The Law Offices of Brachfeld & Associates, PC; and DOES 1 through 50, <br><br> Defendants <br> _____ | Case No.: <br><br> **CLASS ACTION COMPLAINT** <br><br> 1) FDCPA CLAIM <br> 2) BPC § 17200 CLAIM <br> 3) EQUITY CLAIM <br> 4) RFDCPA CLAIM <br> 5) CCP § 724.050 CLAIM (INDIVIDUAL) <br><br> DEMAND FOR JURY TRIAL |

1  Plaintiffs Ginger Melillo and Abigail Usher allege the following on behalf of
2  themselves and all others similarly situated (the "Class"). Plaintiffs' claims are
3  brought upon personal knowledge of their own actions and experiences, and
4  otherwise upon information and belief.

5  Defendant Erica L. Brachfeld is a collection attorney who works under the
6  banner of Defendants Brachfeld Law Group, PC and the Law Offices of Brachfeld
7  & Associates, PC. Except where context suggests otherwise, Erica L. Brachfeld will
8  be referred to as "Ms. Brachfeld," the Brachfeld entities will be referred to herein as
9  the "Brachfeld Entities" and defendants cumulatively will be referred to as the
10 "Collectors" or the "Defendants."

**BACKGROUND**

11
12 1.    Ms. Brachfeld has been listed as counsel of record in tens of thousands of
13 collection lawsuits on behalf of junk-debt buyers ("Junk Debt Buyers"). As used
14 herein, "Junk Debt Buyer" refers to a company that acquires large "portfolios" of
15 what is allegedly defaulted consumer debt, and then brings state court collection
16 lawsuits against consumers to facilitate collection on those supposed debts.

17 2.    Junk Debt Buyers claim to own credit card accounts that the original creditors
18 have written off as "uncollectable." These alleged credit card accounts are
19 aggregated into multimillion dollar portfolios (composed of relatively tiny consumer
20 debts) and sold back and forth between Junk Debt Buyers for pennies on the dollar.
21 The junk debt marketplace is filled with undocumented and poorly documented
22 accounts. Consequently, Junk Debt Buyers end up with dubious ownership rights
23 to unsubstantiated debts with compromised chains of title.

24 3.    Consumers are sometimes approached by multiple entities claiming
25 "ownership" of the same "debt." Consumers sometimes pay off a previously
26 defaulted debt and still end up being sued by one or more Junk Debt Buyers on that

27
28

1   account.  Junk Debt Buyers are able to extract payment on these accounts primarily

2   by bringing lawsuits against consumers.

3   4.      Junk Debt Buyers face a quandry:  Their business model depends upon

4   bringing a constant stream of thousands of collection lawsuits.  However, California

5   law prohibits companies from representing themselves in court.  Adding to the Junk

6   Debt Buyers' problem is that fact that no ethical attorney would find a good faith

7   basis for filing a lawsuit on most of the accounts in a junk debt portfolio.  Junk Debt

8   Buyers can therefore operate only by finding unethical attorneys;  weak links who

9   are willing to authorize the filing of thousands of cases per month while turning a

10  blind eye to the unsubstaniated nature of the filings.

11  5.      Enter, an attorney – an "officer of the court" – who has abandoned her gate-

12  keeping role in exchange for a veritable sack of gold.  An attorney who ushers into

13  the court brutal invaders – Junk Debt Buyers – whose bogus claims would otherwise

14  be filtered out as lacking any good faith factual and legal basis.  These marauding

15  Junk Debt Buyers, as they hack down consumers by the thousands, might well ask

16  one another knowingly "who's in your pocket" and respond "Erica Brachfeld."

17                          **INTRODUCTION**

18  6.      This class action addresses two problems:  1) The Collectors have unlawfully

19  facilitated and prosecuted collection lawsuits and obtained and enforced default

20  judgments without attorney representation;[1]  2) The Collectors have engaged in a

21  practice of extracting payments from consumers by offering to settle lawsuits, then

22  after receiving payment, continuing to demand more money on the "settled" claims.

23  7.      First, Ms. Brachfeld and the Brachfeld Entities have facilitated Junk Debt

24  Buyers in the processing of thousands upon thousands upon thousands of lawsuits

25

26  [1] Plaintiff Abigail Usher does not join in the allegations and claims concerning improperly
    obtaining default judgments because no default judgment has been obtained in the underlying

27  collection action against her.

28

1   through the court system with no attorney representation.  In all of these cases Ms.

2   Brachfeld's name has appeared as counsel of record, but the Junk Debt Buyers have

3   actually been represented by lay-people engaging in the unauthorized practice of

4   law.  Ms. Brachfeld's facilitation of these Junk Debt Buyer lawsuits constitutes a

5   misrepresentation to the affected consumers.  Attaching Ms. Brachfeld's name to

6   Junk Debt Buyers' lawsuits implies attorney involvement lending unwarranted

7   credibility to the Junk Debt Buyers' asserted ownership of underlying debts.

8   8.      In actuality, the Brachfeld Entity employees representing the Junk Debt

9   Buyers are lay-people, typically with no legal education. Ms. Brachfeld's

10  contribution to the process does not go beyond mandating a quota from her

11  employees: Process x-number of cases every day.

12  9.      Ms. Brachfeld is not "representing" these Junk Debt Buyers.  She does not

13  review the documents her staff prepares.  She does not even sign the documents

14  prepared in her name.  Ms. Brachfeld is simply selling cart blanche access to

15  California's state courts and facilitating the Brachfeld Entities' unauthorized

16  practice of law.

17  10.     The second issue presented in this case is the Collectors' practice of entering

18  into settlement agreements with consumers, accepting money in full settlement of a

19  claim, and then, in violation of the settlement agreement, continuing to demand more

20  money.

21                          **JURISDICTION AND VENUE**

22  11.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331

23  and 15 U.S.C. § 1692k(d), and pursuant to 28 U.S.C. 1332(d), since there are at

24  least 100 class members in the proposed class, the combined claims of proposed

25  class members exceed $5,000,000, exclusive of interest and costs, and some class

26  members are currently citizens of states other than Defendants' states of

27  citizenship

28

12.     This Court has personal jurisdiction over Defendants because Defendants conduct substantial business in this District, have sufficient minimum contacts with this state, and otherwise purposely avail themselves of the markets in this state through their collection activities and use of the courts in this state, to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

13.     Venue is proper pursuant to 28 U.S.C. 1391(a) because one of the Plaintiffs resides here, Defendants do business in this District and receive significant payments from customers in this District, and a substantial part of the events or omissions giving rise to the claims occurred in this District.

**PARTIES**

14.     Plaintiff, Ginger Melillo, is a natural person and a resident of Pasadena, California in the County of Los Angles.

15.     Plaintiff Abigail Usher is a natural person and a resident of Mountain View California, in the County of Santa Clara.

16.     Defendant Erica L. Brachfeld is an individual who does business and practices law (or at least purports to practice law) throughout California, including in the County of Santa Clara.

17.     Defendant Law Offices of Brachfeld & Associates, PC is, on information and belief, a California Professional Corporation.   It does business in California, including in Santa Clara County.  It is an entity via which Erica Brachfeld operates in connection with the prosecution of collection lawsuits.

18.     Defendant The Brachfeld Law Group, PC is, on information and belief, a California Professional Corporation.  It does business in California, including in Santa Clara County.   It is an entity via which Erica Brachfeld operates in connection with the prosecution of collection lawsuits.

19.     The Collectors acted each on their own behalf and also through one another and on each other's behalf, and through DOE defendants to commit the acts alleged herein.  Each defendant is an agent for all other defendants, and is directly and vicariously responsible for their actions, either by agreement or by operation of law, including, inter alia, the laws applicable to actual or apparent agency and attorney-client relationships as applied to debt collectors.

20.     The separateness of the Brachfeld Entities should be disregarded to the extent required to do justice.  On information and belief, the existence of the Brachfeld Entities as legally separate entities is a sham and a farce, and they are in fact operated as one entity.

21.     The true names and capacities of defendants sued herein as DOES 1 through 50 or their specific connection to these allegations are currently unknown and said defendants are sued under said fictitious names.  Each of the defendants designated herein as a DOE is legally responsible in some manner for the unlawful acts referred to herein.  Plaintiff will seek leave of Court to amend this Complaint to reflect the true names and capacities of the Defendants designated herein as DOES when such identities and the true connection of them to this case have become known.

**GENERAL ALLEGATIONS**

22.     Erical L. Brachfeld and the Brachfeld Entities serve large scale purchasers of alleged consumer credit card accounts. The business model of these Junk Debt Buyers requires processing a vast numbers of accounts through the courts to gain access to powerful judgment enforcement mechanisms such as wage garnishments and bank levies.  Companies are not allowed to represent themselves in court, but must appear via an attorney.  However, the rules of legal ethics are such that attorneys must engage in reasonable investigation and have a good faith basis for the cases filed, rendering the business model of most mass debt buyers, including Ms.

Brachfeld's junk debt purchasing clients, inherently untenable without engaging in unlawful activity.

23.   Ms. Brachfeld's clients have "solved" this problem by retaining attorneys willing to illegitimately launder "portfolios" of debt *en masse* with no legal scrutiny or evaluation.  Ms. Brachfeld and the Brachfeld Entities are retained by their clients primarily for that unlawful purpose.  Ms. Brachfeld does not evaluate or review the documents that the Brachfeld Entities file in Court on behalf of their Junk Debt Buyer clients.  She does not interact with her staff concerning such documents. Indeed, Ms. Brachfeld does not even sign the documents that her office submits to California courts in her name.

24.   What Ms. Brachfeld does do, is saddle her staff of non-attorneys with quotas for the number of cases to be processed each day.   On information and belief, the Brachfeld Entities run a sweatshop of over a dozen employees tasked with processing multiple complaints and default judgment packages every day.  This results in upwards of 20,000 complaints and default judgment  packages, none of which has ever been reviewed by an attorney, being shoved into the pipeline of California's state courts each month, all bearing Ms. Brachfeld's name. To meet their quotas, Ms. Brachfeld's staff must forge her signature on court documents at least a dozen times every working hour.  To put it mildly, Ms. Brachfeld facilitates the Brachfeld Entities' unauthorized practice of law in violation of Business and Professions Code § 6125.

25.   The victims of this unauthorized practice of law, include not only the consumers who are sued, but also all the tax payers of California, whose court system has been bogged down in an ocean of frivolous filings originating with Erica L. Brachfeld and the Brachfeld Entities.

26.   Meanwhile, the consumers that are sued are led to believe that collection lawsuits against them have been scrutinized and approved by an attorney,

1   and therefore have merit.  In truth, the claims could be defeated by a consumer

2   who competently challenged the Junk Debt Buyer's ownership of the accounts at

3   issue.

4   27.   Until now, the Collectors' ongoing fraud has prevented the Class from

5   recognizing and pursuing the need to seek the remedies sought herein.

6   28.   Adding insult to injury, once the Collectors intimidate a consumer into paying

7   money to settle a dubious collection lawsuit, the Collectors then deny the finality of

8   the settlement, and demand even more money.

9          **A.     THE COLLECTION ACTION AGAINST GINGER MELILLO**

10  29.   The Collectors filed a collection lawsuit (the "Melillo Collection Action")

11  against Ms. Melillo in the Superior Court for the State of California, in the County

12  of Los Angeles.  In the Melillo Collection Action, the Collectors claimed that their

13  Junk Debt Buyer client, Unifund Partners, CCR, had acquired a defaulted credit card

14  account on which Ms. Melillo allegedly owed approximately $12,000.

15  30.   Scrutiny of the documentation submitted in support of the default judgment

16  reveals that Ms. Melillo's denial of the debt buyer's ownership of the debt would

17  have constituted a meritorious defense.  However, like most consumers, Ms. Melillo

18  attributed credibility to the fact that an "attorney" made the allegations against her,

19  and therefore accepted the assertions that the Junk Debt Buyer owned the account.

20  31.   Although Ms. Brachfeld is identified as the attorney of record in the Melillo

21  Collection Action, she never reviewed any documentation relating to it, nor did she

22  speak to anyone about it or even review the complaint (the "Melillo Collection

23  Complaint").  In fact, during the entire prosecution of the Melillo Collection Action,

24  neither   Ms.   Brachfeld   nor   any   other   attorney   was   involved.

25  /////

26  /////

27  /////

28

Ginger Melillo et al. v. Erica L. Brachfeld, et al., Class Action Complaint

1   32.    The signature line on the Melillo Collection Complaint looks like this:

2

3       Erica L. Brachfeld, Esq.                                   
          (TYPE OR PRINT NAME)                                    (SIGNATURE OF PLAINTIFF OR ATTORNEY)

4

5   33.    After filing the Melillo Collection Complaint, the Collectors applied for and

6   were granted a default judgment.  Ms. Brachfeld's purported signature on page 1 of

7   the request for default judgment, looks like this:

8

9                                                                  
        Erica L. Brachfeld, Esq.
10         (TYPE OR PRINT NAME)                           (SIGNATURE OF PLAINTIFF OR ATTORNEY FOR PLAINTIFF)

11  34.    Ms. Brachfeld's supposed signature on page 2 of the request for default

12  judgment (the other side of the same page) looks like this:

13

14      Erica L. Brachfeld, Esq.
          (TYPE OR PRINT NAME)                                  (SIGNATURE OF DECLARANT)
15

16  35.    The above forged signatures are demonstrative of the fact that Ms. Brachfeld's

17  staff of non-attorneys have carte blanche to prepare, sign and file documents with the

18  court with no substantial attorney involvement.  The Collectors engage in this

19  extrinsic fraud and forgery in order to create the illusion that Junk Debt Buyer

20  lawsuits are brought and prosecuted by an attorney and that there is a factual and

21  legal basis for the claims made in the lawsuits.

22  36.    Most, if not all, of the default judgments that Ms. Brachfeld and the Brachfeld

23  Entities have ever obtained, including, in particular, the judgment in the Melillo

24  Collection Action and every default judgment Ms. Brachfeld has ever obtained for

25  a Junk Debt Buyer, are the product of extrinsic fraud and forgery.

26  37.    In the Melillo Collection Action, Ms. Melillo ultimately learned of an abstract

27  of the default judgment recorded with the office of the Los Angeles County Recorder

28

1   (said abstract bearing yet another version of Ms. Brachfeld's "signature").
2   Accordingly, Ms. Melillo agreed to pay a lump sum payment of $9,000 to satisfy the
3   judgment and clear her name.  The written settlement proposal sent by the Collectors
4   stated that upon timely receipt of the $9,000 "Acknowledgement of Satisfaction shall
5   be filed with the Court."  Ms. Melillo paid the $9,000 before the due date, and the
6   Collectors accepted the payment.

7   38.    Despite full payment by Ms. Melillo, the Collectors did not provide a notice
8   of satisfaction of judgment.  Indeed, during a telephone call on February 9, 2009, an
9   individual working at the Law Offices of Brachfeld & Associates, PC who identified
10  himself as "Jon" explicitly refused to provide any such documentation and in fact
11  stated that the judgment lien would not be released unless Ms. Melillo paid the entire
12  amount of the judgment plus interest and costs, despite the earlier agreement.  Jon
13  continued to perpetuate the notion that Ms. Brachfeld had obtained a judgment
14  against Ms. Melillo, the implication being that it was a valid judgment obtained by
15  an attorney without resort to extrinsic fraud.

16  39.    Ms. Melillo then sent a demand letter to Ms. Brachfeld in compliance with
17  seeking acknowledgement of satisfaction of judgment, in compliance with CCP §
18  724.050.  Ultimately, the court in the Melillo Collection Action had to issue an order
19  noting "that Ms. Melillo has satisfied the judgment" and that the "prior refusal to
20  acknowledge satisfaction was improper and unjustified."

21        **B.     THE COLLECTION ACTION AGAINST ABIGAIL USHER**

22  40.    Ms. Brachfeld filed a collection lawsuit (the "Usher Collection Action")
23  against Ms. Usher on behalf of Arrow Financial Services, LLC, another Junk Debt
24  Buyer.  The Usher Collection Action was filed in the Superior Court for the State of
25  California in the County of Santa Clara.

26  41.    Shortly after filing the Usher Collection Action, Ms. Brachfeld sent a form
27  letter to Ms. Usher including a settlement offer.  The letter indicated that Ms. Usher's

28

timely payment of $2,051.86, would secure full settlement of the Usher Collection Action.   The settlement offer read in relevant part, as follows:

> You qualify for a reduction on your account for a total payout of $2,051.86.  That is a savings of $1,367.90.  Please contact this office or mail in your payment by 10/28/2009.  If payment is not received by 5 P.M. on that date, this offer is withdrawn. …If you take advantage of the above settlement offer to avoid future collection contacts on your account, upon receipt of the full settlement funds, honored by our bank, we will consider this account resolved.

42.    Prior to the deadline in the letter, Ms. Usher called Ms. Brachfeld's office and spoke to a woman who confirmed that Ms. Usher's payment of $2,051 would bring the matter to an end.  Ms. Usher agreed to the proposed settlement, and timely paid the requested $2,051.86, in full.  Ms. Usher was given a purported "confirmation number" and assured that her payment marked the end of the matter.

43.    Unfortunately, the Collectors' representations that Ms. Usher's payment would allow her to "avoid future collection contacts on [the] account" and that the Collectors would "consider [the] account resolved" in exchange for Ms. Usher's payment, were utterly false.  Ms. Usher did not get the peace she had been promised, and that she had purchased.

44.    The Collectors sent Ms. Usher a follow-up form letter, along with two enclosures titled "Notice of Conditional Settlement Pursuant to Stipulation" and "Authorization for Recurring Direct Payments."

45.    The follow up materials were not merely an attempt to formalizing the agreement that had already been reached (and pursuant to which Ms. Usher had already paid).  Rather, they were an effort to re-characterize the settlement from the

ground up as being "conditional" upon Ms. Usher making further payment. The letter also demanded that Ms. Usher fill out a "questionnaire" revealing the details of her bank routing and account numbers "within 10 days". The newly characterized "conditional" settlement papers demanded payment of another $2,050.86 in order to avoid a publicly recorded judgment.

46.     In short, the Collectors "softened up" Ms. Usher and the Class by filing a lawsuit, falsely conveying the impression that an attorney found the collection claim to be meritorious. These consumers were then led to believe they could settle the lawsuit for a portion of the amount alleged in the complaint. Finally, once the consumer paid an agreed upon amount, the Collectors followed up, demanding further payment. Unsophisticated debtors often pay the additional amounts. In either event, the consumers do not get the peace and freedom from further collection activity that they originally "purchased" when they accepted the Collectors' settlement offer.

## CLASS ALLEGATIONS

47.     Plaintiffs bring this class action pursuant to Federal Rule of Civil Procedure 23, on behalf of themselves and others similarly situated. The "Class" is defined as follows:

> All California residents subjected to collection lawsuits
> where Ms. Brachfeld was attorney of record, where one or
> both of the following conditions exist:
> a) The Collectors obtained a default judgment in favor of a
> Junk Debt Buyer;
>  and/or
> b) The consumer made a single payment in full settlement
> of a collection lawsuit and was then subjected, within the
> year preceding the filing of this lawsuit, to further

1    collection activity by the Brachfeld Entities based on the

2    same claim.

3    48.    The following persons shall be excluded from the Class:  (a) Defendants and

4    their owners, subsidiaries and affiliates; (b) all persons who make a timely election

5    to be excluded from the proposed Class; (c) governmental entities; and (d) the

6    judge(s) to whom this case is assigned and any immediate family members thereof.

7    49.    Plaintiffs reserve the right to modify or amend the Class definition(s) before

8    the Court determines whether certification is appropriate.

9    50.    The Class is so numerous that joinder is impracticable.

10   51.    This action involves common questions of law and fact, including the

11   following:

12        a)  Whether Defendants violated California Business & Professions

13            Code § 17200, et seq;

14        b)  Whether Defendants violated the Fair Debt Collection Practices Act,

15            15 USC § 1692, et seq.;

16        c)  Whether Defendants violated the Rosenthal Fair Debt Collection

17            Practices Act, California Civil Code § 1788, et seq.;

18        d)  Whether there was attorney representation in cases where Ms.

19            Brachfeld was listed as attorney of record;

20        e)  Whether default judgments obtained for Junk Debt Buyers are void

21            *ab initio* due to extrinsic fraud, where Ms. Brachfeld is listed

22            as attorney of record;

23        f)  The extent of damages suffered by consumers by default judgments

24            obtained for Junk Debt Buyers under the false guise of attorney

25            representation by Ms. Brachfeld;

26

27

28

g) The availability and nature of the equitable remedies where default judgments were based on Ms. Brachfeld's ostensible legal representation of Junk Debt Buyers;

h) Whether money should be refunded to consumers who made lump-sum settlement payments to a Brachfeld Entity and then faced further collection activity;

i) Whether punitive damages are available;

j) Whether injunctive corrective measures may be imposed;

52. Plaintiffs will fairly and adequately represent the interests of the Class. Plaintiffs' interest do not conflict with the interests of the Class they seek to represent; they have retained counsel experienced in class actions and in consumer credit and debt collection abuse cases; and Plaintiffs intend to prosecute this action vigorously.

53. Plaintiffs' claims are typical of the claims of the Class. Plaintiffs have no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiffs.

54. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Individual litigation of the claims of all class members is impracticable because the cost of litigation would be prohibitively expensive for each class member and impose an immense burden upon the courts. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same complex legal and factual issues. By contrast, the conduct of this action as a class action, with respect to some or all of the issues presented in this complaint, presents fewer management difficulties, conserves the resources of the parties and of the court system, and is the only means to protect the rights of all class members.

**FIRST CLAIM**
**FAIR DEBT COLLECTION PRACTICES ACT**
**(BY ALL PLAINTIFFS AND THE CLASS)**
**(AGAINST ALL DEFENDANTS)**

55.     All the allegations of this Complaint are hereby incorporated into this Claim, except insofar as they may be inconsistent, in which case such inconsistent allegations are pleaded in the alternative.

56.     Defendants are debt collectors under the terms of the Fair Debt Collection Practices Act, and by doing the things alleged herein, were engaged in the attempted collection of a consumer debt and are legally bound to follow the prescriptions of the FDCPA.

57.     Defendants violated at least the following provisions of the FDCPA: 15 U.S.C. § 1692e, and 15 U.S.C. § 1692f, and subsections thereof.  Misrepresentations as described above include, but are not limited to, the representations that Ms. Brachfeld was substantially involved in the collection lawsuits bearing her name and that consumers needed to pay more money after satisfying the terms of settlements.  Unfair collection activity as described above includes, making the aforementioned misrepresentations, and also consists of unlawfully co-opting the mechanisms of the state courts and facilitating and engaging in the unlicensed practice of law, to the detriment of consumers.

58.     Plaintiffs have suffered actual damage in consequence of Defendants' unlawful conduct, including monetary damage.

59.     WHEREFORE, Plaintiffs respectfully requests that this Court grant such relief as requested in the below Prayer for Relief.

**SECOND CLAIM**
**BUSINESS & PROFESSIONS CODE § 17200 ET SEQ.**
**(BY ALL PLAINTIFFS AND THE CLASS)**
**(AGAINST ALL DEFENDANTS)**

60.     All the allegations of this Complaint are hereby incorporated into this Claim, except insofar as they may be inconsistent, in which case such inconsistent allegations are pleaded in the alternative.

61.     Defendants conduct, as described above constitutes unlawful, unfair and fraudulent business acts or practices under Business and Professions Code § 17200 et seq.

62.     As a result of Defendants' acts of unfair practices, Plaintiffs suffered actual damage, including monetary damage;

63.     WHEREFORE, Plaintiffs respectfully request that this Court grant such relief as is specified in the below Prayer for Relief.

**THIRD CLAIM**
**EQUITABLE CLAIM TO SET ASIDE VOID JUDGMENTS**
**(BY GINGER MELILLO AND THE CLASS)**
**(AGAINST ALL DEFENDANTS)**

64.     All the allegations of this Complaint are hereby incorporated into this Claim, except insofar as they may be inconsistent, in which case such inconsistent allegations are pleaded in the alternative.

65.     Defendants conduct constitutes extrinsic fraud rendering void *ab initio* all default judgments obtained by the Collectors on behalf of Junk Debt Buyers.

66.     A meritorious defense exists and existed to each of the underlying collection actions, insofar as the Junk Debt Buyers bringing those lawsuits did not own and could not prove ownership of the accounts at issue therein.

67.     Ms. Melillo and the Class are diligent in moving to set aside the void judgments, insofar as the Collectors' onoing fraud has, until now, concealed the invalidity of the judgments.

68.    WHEREFORE, Ms. Melillo respectfully request that this Court grant such relief as is specified in the below Prayer for Relief, including setting aside all default judgments obtained by the Collectors on behalf of Junk Debt Buyer clients.

**FOURTH CLAIM**
**ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT**
**(BY ALL PLAINTIFFS AND THE CLASS)**
**(AGAINST ALL DEFENDANTS EXCEPT ERICA L. BRACHFELD)**

69.    All the allegations of this Complaint are hereby incorporated into this Claim, except insofar as they may be inconsistent, in which case such inconsistent allegations are pleaded in the alternative.

70.    Defendants are debt collectors under the terms of the Rosenthal Fair Debt Collection Practices Act, and by doing the things alleged herein, were engaged in the attempted collection of a consumer debt and are legally bound to follow the prescriptions of the RFDCPA. Cal. Civ. Code § 1788 – 1788.32.

71.    Defendants' violations of the RFDCPA include violations of Civ. Code 1788.17 which incorporates violations from the FDCPA.

72.    Defendants' violations were intentional and malicious.

73.    Plaintiffs have suffered actual damage from Defendants' violations, including monetary damage.

74.    WHEREFORE, Plaintiffs respectfully request that this Court grant such relief as is specified in the below Prayer for Relief.

**FIFTH CLAIM**
**CODE OF CIVIL PROCEDURE § 724.050.**
**(BY GINGER MELILLO INDIVUDUALLY)**
**(AGAINST ALL DEFENDANTS)**

75.    All the allegations of this Complaint are hereby incorporated into this Claim, except insofar as they may be inconsistent, in which case such inconsistent allegations are pleaded in the alternative.

76.    Plaintiff Ginger Melillo satisfied Unifund's judgment against her.

77.   Defendants refused to issue a notice of satisfaction of judgment, and continued to refuse after statutory notice was provided pursuant to CCP § 724.050.

78.   As a result of Defendants' refusal, Ms. Melillo suffered actual damage, including monetary damage;

79.   WHEREFORE, Ms. Melillo respectfully requests the Court grant such relief as is specified in the below Prayer for Relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves and all others similarly situated, pray for the following:

A.   An order certifying this case as a class action and appointing Plaintiffs and Plaintiffs' counsel to represent the Class;

B.   An order awarding Plaintiffs and the Class actual, consequential, and statutory damages to be determined at trial;

C.   An order awarding exemplary damages in an amount to deter and punish;

D.   An order granting equitable relief, vacating as void *ab initio*, all default judgments issuing from California state courts, wherein Ms. Brachfeld as attorney of record represented Junk Debt Buyers;

E.   An order directing equitable disgorgement of Defendants' ill-gotten proceeds;

F.   An order prohibiting Ms. Brachfeld and the Brachfeld Entities from continuing to facilitate or engaging in the unlicensed practice of law;

G.   An order implementing such prophylactic measures as limiting the ratio of cases to attorneys in Ms. Brachfeld's office;

H.   An order granting attorney's fees and costs of suit;

/////

/////

1      I.     An order granting such other and further relief as the Court may deem

2          just and proper.

3               **<u>DEMAND FOR JURY TRIAL</u>**

4        Plaintiffs respectfully demand a jury trial on all matters for which a jury trial

5  is guaranteed.

6

7

8  DATED:  12/11/2009            Law Office of Ian Chowdhury

9                               Ian D. Chowdhury

10                          Attorney for Plaintiffs

                         Ginger Melillo and Abigail Usher

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ginger Melillo et al. v. Erica L. Brachfeld, et al., Class Action Complaint         – 18 –